UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHYLLIS DAVIS,

                    Plaintiff,                          Case Number 17-12475
                                                        Honorable David M. Lawson
v.

ECHO VALLEY CONDOMINIUM ASSOCIATION,
CASA BELLA PROPERTY MANAGEMENT, INC.,
and WANDA RULE,

                    Defendants.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO EXCLUDE MARK CLOR'S TESTIMONY, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DISMISSING CERTAIN DISCOVERY MOTIONS, AND DISMISSING THE AMENDED COMPLAINT WITH PREJUDICE

Plaintiff Phyllis Davis, an asthmatic, alleges that defendant Echo Valley Condominium Association violated the Fair Housing Amendments Act when it did not accommodate her sensitivity to secondhand smoke by banning smoking throughout the condominium complex, including within private residences. The plaintiff also brought claims under state statutory and common law. Davis has moved for summary judgment on liability. Echo Valley and its former property manager, Casa Bella Property Management, Inc., also moved for summary judgment, arguing, among other things, that the accommodation Davis demands is unreasonable, particularly because smoking within one's home is not illegal. Davis has not identified evidence that creates a material question of fact on all the elements of her claims. Therefore, the Court will deny the plaintiff's motion for summary judgment, grant the defendants' motion for summary judgment, and dismiss the amended complaint with prejudice.

Davis also contends that testimony from a heating contractor about the furnace duct work in Davis's building should be rejected for a variety of reasons. None of them have merit, so Davis's motion to strike his testimony will be denied as well.

I.

Plaintiff Phyllis Davis is a breast cancer survivor, who has asthma and multiple-chemical sensitivity disorder. She says that her medical conditions substantially interfere with her ability to breathe when she is exposed to certain chemicals and irritants. A major offender is cigarette smoke.

Davis lives in Unit 214 in the Echo Valley subdivision, a condominium she purchased on 2004. Defendant Echo Valley Condominium Association is responsible for governing and managing eight buildings in the Echo Valley subdivision. On November 10, 2014, defendant Casa Bella Property Management, Inc. contracted with Echo Valley to manage the property within the subdivision. Casa Bella's contract expired at the end of 2017, and it no longer provides property management services to Echo Valley.

The units at Echo Valley are subject to a master deed and bylaws as amended, and to covenants, conditions, and restrictions found in those documents or created based on them. The bylaws vest in Echo Valley's board of directors the power to make rules "necessary for the administration of the affairs of the Association," including "[r]easonable regulations . . . concerning the use of the common elements." The interior space of a condominium unit is not considered a "common element" within the master deed's definition. The bylaws prohibit "immoral, improper, unlawful or offensive activity" in the common elements and the individual units. There is no ban on smoking at the condominium complex.

Davis's Unit 214 is one of four in the building.  It shares a common hallway and stairs with the three other units: Unit 114, Unit 115, and Unit 215.  The parties dispute whether these spaces share a ventilation system that circulates air (including pollutants and contaminants) among the connected units.

In 2012, former defendants Moisey and Ella Lamnin leased Unit 115 to defendant Wanda Rule.  Rule occupied the unit until December 31, 2017.  During Rule's tenancy, the plaintiff complained that Rule and her guests regularly smoked tobacco and other substances in Unit 115, which Davis says she could smell from her unit.  On April 3, 2018, plaintiff's counsel informed defense counsel that "someone in Ms. Davis' building has started smoking cigarettes and marijuana."  When prompted for more detail as to the source of the smoke, plaintiff's counsel replied that he was "investigating" the source, but he believed that "it may be coming from Unit 114."

Davis believes that the secondhand smoke has exacerbated her health conditions, and, as a breast cancer survivor, exposes her to an increased risk of cancer and cancer-related problems.  A doctor at Davis's medical care facility stated that exposure to tobacco is detrimental to Davis's health and increases the risk of her suffering an asthma attack.

In addition to tobacco-related smoke, Davis has complained that other smells and fumes were problematic.  In a January 31, 2015 letter, Davis informed her neighbor that the cooking smells emanating from the neighbor's unit "engulfed" her condo and she "almost had an asthma attack."  She requested that her neighbor open her window and turn the exhaust fan on when frying or grilling.  In that same letter, the plaintiff complained about and demanded accommodations relating to slamming doors and FedEx ringing the doorbells of other residents' units.

Davis says that she has made the defendants aware of her medical conditions on several occasions and asked that the smoking issue be addressed. On March 1, 2016, Davis sent Colleen O'Rourke, an agent of Casa Bella, two emails that raised Davis's concerns about the smoking issue. In the first email, Davis asked O'Rourke what can be done to make owners accountable for smoke that enters the shared ventilation system and stated that they should be able to make smokers insulate their doors and vents. Davis wrote that asthmatics suffer when forced to breathe in second- and third-hand smoke toxins, and that something had to be done about the smoking nuisance that was affecting Davis's breathing and causing constant coughing and near asthma attacks. In the second email, Davis wrote that because of the heavy smoke, she must turn the heat up and open the windows in her condo so that she can breathe. O'Rourke promptly responded to Davis's emails and explained that because the Echo Valley bylaws and state law did not prohibit smoking in one's home, she did not believe anything could be done. The email suggested that Davis's complaint could be placed on the condo board's meeting agenda to see if the board would like an attorney's opinion on the matter.

Davis took up O'Rourke on her offer and asked that her issue be placed on the upcoming board meeting agenda, seeking to have smoking designated a nuisance under the bylaws. She also suggested that the owner of Unit 115 reseal the gaps in his doors and reevaluate his vents. The item was taken up at the March 15, 2016, board meeting. Board member Tony Barker suggested that Davis and other aggrieved residents cover their door base openings to prevent the smell from coming into their units. The board apparently questioned whether smoking may legally be labeled a health nuisance and did not reach a decision.

On March 29, 2016, O'Rourke sent a letter to the Lamnins that mentioned complaints regarding the heavy cigarette smoke emanating from Unit 115 and requested, on behalf of the

condo board, that the Lamnins assist in keeping the smell contained to their unit. O'Rourke suggested that the odor could be prevented from spreading throughout the building by smoking outside on the balcony or deck, using air purifiers, or insulating the entry door. O'Rourke noted that there was no rule or regulation that prohibited smoking in one's home, but that it could be considered a nuisance to those who do not smoke. O'Rourke later testified that the board had agreed that the letter would be sent with the wording that Davis requested.

On February 21, 2017, the board held a meeting; the minutes reflect that Davis requested that another letter be sent to the owners of Unit 115 about the heavy smoking. Davis apparently told the board that the smoke was infiltrating common areas and other units, and the smell was horrendous and was bringing down the property value of the building.

On March 6, 2017, the Association installed a fresh air system on Davis's furnace ductwork to help with the smoke problem. Mark Clor, the licensed contractor who worked on Davis's system, testified that he installed the fresh air system to allow Davis's furnace to draw in air from the outside of the building. Clor also averred that each unit has its own furnace and ductwork. He testified at his deposition that after the fresh air system was installed, Davis told him that she thought it made a difference. He said that he was personally familiar with the heating and cooling system that services Davis's unit as well as the connected units and asserted that none of the units draw air from or ventilate air into the other connected units. He also stated that none of the connected units draw air from the common element stairway, and that the ducts that vent air into the common element stairway for heating purposes can be closed.

On April 24, 2017, the plaintiff's previous lawyer sent the Lamnins a letter detailing her health issues and asserting that by allowing their tenant(s) to smoke, the Lamnins were in breach of the condominium documents and committing common law nuisance. The lawyer demanded

that the Lamnins take appropriate measures to assure that smoke will not continue to escape into Davis's unit or the common element areas of the building. He alternatively demanded that the Lamnins request their tenant(s) immediately to cease and desist from further smoking. Davis's lawyer asked the Lamnins to contact him with a proposal as to how they intended to eliminate the nuisance and continuing violation of condominium documents. The letter also was sent to Echo Valley, asserting that it served as a "formal demand" that Echo Valley take further action to provide relief, and warning that Davis intended to take legal action if the matter were not resolved.

On May 17, 2017, Davis's former lawyer received a response from the Lamnins that denied any breach of condominium documents or the existence of a nuisance. The Lamnins took issue with the idea that any smoke emanating from their unit impaired or aggravated Davis's pre-existing health conditions, noting that neither the condominium's bylaws nor Michigan law prohibited smoking inside one's apartment. However, the Lamnins stated that Rule and her husband had notified them that they were willing to purchase and use an air purifier to clean the air in their unit.

Davis asserts that she discussed her asthma and expressed her concern about the smoking issue at multiple condo board meetings, and she made numerous verbal requests to O'Rourke and Echo Valley board members to address the problem. She also kept "smoke logs" beginning in May of 2017 documenting times when she smelled smoke. Former board president Tony Barker testified that when he was in Davis's hallway, he could smell a "pretty significant amount of smoke," and that the smell was worse in Davis's building than in others. Barker admitted, though, that he could not speak to the odor in Davis's unit as he was never inside.

After this litigation commenced, the Echo Valley board proposed an amendment to the bylaws that would prohibit smoking on the property. Under Michigan law, the proposed

amendment required two-thirds approval from all co-owners eligible to vote. The vote occurred on April 9, 2018, and the proposed amendment did not pass.

On July 31, 2017, Davis filed a four-count complaint against Echo Valley, Casa Bella, and the Lamnins, alleging violations of the federal Fair Housing Amendments Act (FHAA) (Count I) and Michigan Persons with Disabilities Civil Rights Act (PWDCRA) (Count II), tortious nuisance (Count III), and breach of covenants (Count IV). Two months later, Davis filed her first motion for a preliminary injunction against the three defendants. At a status conference on November 7, 2017, the Court advised the plaintiff to amend the complaint to include the Lamnins' tenant. The next week, Davis filed an amended complaint that named the tenant, Wanda Rule, as a defendant. Davis then filed a second motion for preliminary injunction against Ms. Rule. Davis did not serve the lawsuit on Rule until December 6, 2017. She did not serve notice of the preliminary injunction hearing on Rule until January 2, 2018. On January 5, 2018, the Court learned that Ms. Rule permanently moved out of Unit 115 on December 31, 2017. Rule never responded to the lawsuit, the parties agreed to resolve the plaintiff's motion for a preliminary injunction by stipulation, and the Lamnins thereafter were dismissed from the case with prejudice.

II.

On March 6, 2017, heating and cooling contractor Mark Clor installed a fresh air system on the plaintiff's furnace ductwork. Clor owns MC Home Heating & Cooling in Garden City, Michigan, and he has been in the business for 35 years. Based on his own observations and his experience working on Echo Valley's heating and cooling systems since 2008, Clor testified that Davis's condominium does not share ventilation ductwork with any of the other three units in her building. Because the basement is open and all the furnaces and ducts were visible to him, he could say that each unit has its own furnace and ductwork that is separate from the others.

Characterizing Clor's testimony as an expert opinion, Davis argues that the Court should not let him testify (and presumably not consider his evidence on the summary judgment motions) because the defendants' answer to the complaint says that the ventilation systems are shared, which is a judicial admission foreclosing contrary evidence on the point; Clor's testimony is not based on sufficient facts or reliable methods (Clor did not examine a blueprint and was unable to point to any documentation to support his observation); the testimony is unreliable because it was contradicted by statements made by board members and was based on Clor's recollection from over a year ago; and the defendants did not furnish a timely expert report.

None of these arguments is persuasive. *First*, Davis fails to recognize that the defendants filed an answer to the *amended* complaint, which essentially nullifies its original answer as a pleading in the case. "'Generally, amended pleadings supersede original pleadings.'" *Braden v. United States*, 817 F.3d 926, 930 (6th Cir. 2016) (quoting *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 617 (6th Cir. 2014)). Davis relies on *Pennsylvania Railroad Company v. City of Girard*, 210 F.2d 437, 440 (6th Cir. 1954), in which the court noted that "pleadings withdrawn or superseded by amended pleadings are admissions against the pleader in the action in which they were filed." That may be true, but those "admissions" are evidentiary admissions, not judicial admissions. *See ibid.* (noting that the statement in the original cross-petition "stood admitted on the pleadings until the filing of the amended cross-petition," whereupon the statement in the original pleading became "an admission against interest"). An evidentiary admission does not preclude contrary proof to dispute a fact, and it certainly would not serve as a bar to Clor's testimony. *See Cadle Co. II v. Gasbusters Prod. I Ltd. P'ship*, 441 F. App'x 310, 313 (6th Cir. 2011).

*Second*, Davis's several objections based on the idea that Clor will furnish expert testimony are not on solid ground. When Clor testified that the ventilation systems were separate, he was relating his own observation. He testified:

> Q.      Have you ever looked at a blueprint or something like that to determine how duct work is laid out in any of the buildings?
> A.      No.
> Q.      So you've never seen a blueprint or anything that resembles a blueprint, a drawing, a sketch —
> A.      No.
> Q.      — of Echo Valley?
> A.      No.
> Q.      How do you determine the extent of the HVAC system in each of these different units that you've applied a fresh-air intake to, just a visual inspections or —
> A.      A visual. You can go in the basement. It's an open basement.
> Q.      Okay.
> A.      All the units are next to each other. All the duct work is in the basement. You can trace it visually. That's all you can — you can see where it goes visually. Each unit has its own duct system.
> Q.      Okay. And so aside from the visual inspection, you haven't inspected any other duct work, necessarily, outside of what was in the basement —
> A.      No.
> Q.      — of those units? And no one's provided you with information of the layout of the duct work?
> A.      No.
> Q.      Is that pretty common in your field, that you wouldn't get a blueprint?
> A.      Yes.
> Q.      And you would just fix it as you saw it.
> A.      Yes.
> Q.      Is there any particular methodology you would use to determine the extent of the ventilation system aside from a visual inspection?
> A.      You're going to have to say it — I didn't understand what you're asking.
> Q.      Is there a well-known method for inspecting ventilation systems with a series of steps, a procedure to follow, that you're aware of?
> A.      As far as leakage or . . .
> Q.      As far as understanding the extent of the system, inlets, outlets. You can say a yes or no.
> Ms. Butler.      If you know.
> A.      I — yeah, I don't know.

Mark Clor dep. at 31-33, ECF No. 74-4, PageID.2143.

Clor's testimony was based on his personal knowledge of what he saw and would be admissible as such. *See* Fed. R. Evid. 602.

Nonetheless, one might characterize Clor's testimony — that the four units in Davis's building have separate ventilation systems — as an opinion. But it is not an "expert" opinion subject to the special evidentiary and discovery rules governing expert witnesses. "Expert" testimony consists of opinions or commentary grounded in "specialized knowledge," that is, knowledge that is "beyond the ken of the average juror." *See United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016), *cert. denied sub nom. Casillas v. United States*, 137 S. Ct. 1120 (2017), and *cert. denied,* 138 S. Ct. 2701 (2018); *see also* Fed. R. Evid. 702. It took no special knowledge for Clor to describe what was there in the basement to be seen. The "average juror" would be capable of counting four furnaces, four heat runs, and four cold air return systems in the open basement and see that none of them connected to the others. Clor has specialized knowledge as a heating contractor of 35 years. But he did not have to employ that special knowledge in this case.

Evidence Rule 701 authorizes non-expert witnesses to give opinions that are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. Clor's testimony touches all these bases. His description of the heating systems in Davis's building "result[ed] from a process of reasoning familiar in everyday life, [instead of] a process of reasoning which can be mastered only by specialists in the field." *United States v. White*, 492 F.3d 380, 401 (6th Cir. 2007) (internal quotation marks and citation omitted).

Davis's objections to Clor's evidence based on rules governing expert witnesses are misplaced.

*Third*, Clor's evidence is not rendered unreliable by other evidence that contradicts it. Other board members apparently gave their opinions that some of the units within a building shared ventilation systems. That testimony, however, merely establishes a fact dispute. It does not render Clor's testimony inadmissible, even if it is characterized as expert testimony. *See Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579, 595 (1993) (noting that those matters are best reserved for "[v]igorous cross-examination" and "presentation of contrary evidence" to the jury").

*Fourth*, Davis incorrectly insists that the defendants' pretrial disclosure of Clor's evidence was inadequate. Even if Clor's testimony can be characterized as opinion evidence under Evidence Rule 702, Clor was not required to prepare and sign a report because he was not "retained or specially employed to provide expert testimony in the case" nor did his "duties as the [defendants'] employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). Where a witness's "opinion testimony arises not from his enlistment as an expert but, rather, from his ground-level involvement in the events giving rise to the litigation . . . he falls outside the compass of Rule 26(a)(2)(B)." *Downey v. Bob's Discount Furniture Holdings, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011) (citing *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 869 (6th Cir. 2007)). Clor plainly qualifies as an "on-the-scene expert" whose information was acquired from personal observations during his maintenance work at Echo Valley. He therefore was not required to prepare a written report under Rule 26(a)(2)(B).

Moreover, the defendants satisfied their disclosure obligation under Rule 26(a)(2)(C) when they filed their expert witness list on March 15, 2018. Their disclosure states that "Mark Clor will testify to the condition of the HVAC system located in Phyllis Davis' and neighboring units. Mark Clor is expected to testify that that the Davis Unit does not share a ventilation system with the other Connected Units and that each Unit has its own furnace and ductwork. Mark Clor can testify

to installation of fresh air system in Ms. Davis' Unit." The defendants satisfied the applicable pretrial disclosure requirements.

Davis's motion to exclude Mark Clor's testimony will be denied.

## III.

Davis and the defendants have filed cross motions for summary judgment on all of the liability issues. The fact that they have filed cross motions does not automatically justify the conclusion that there are no facts in dispute. *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003) ("The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate."). Instead, the Court must apply the well-recognized summary judgment standards when deciding such cross motions: the Court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

"The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Id.* at 558. (citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Ibid.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

"[T]he party opposing the summary judgment motion must do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet her burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could

return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting 477 U.S. at 248).

A.

Davis argues that she meets the criteria for disability under the FHAA and PWDCRA. She contends that the defendants, aware of her disability, denied her reasonable accommodation when they refused to prohibit smoking at Echo Valley, and therefore she is entitled to a judgment on liability as a matter of law. Defendants Echo Valley and Casa Bella contend that Davis has failed to offer evidence on several elements of these claims. But the key question is whether the accommodation she demands — banning smoking throughout the Echo Valley complex — is reasonable. As a matter of law, it is not.

The Fair Housing Amendments Act prohibits discriminating "against any person . . . in the provision of services or facilities in connection with [a] dwelling, because of a handicap of . . . that person . . . ." 42 U.S.C. § 3604(f)(2)(a). The PWDCRA provides a "parallel[]" prohibition, and claims under that statute and the FHAA are analyzed similarly. *Bachman v. Swan Harbour Ass'n*, 252 Mich. App. 400, 417, 653 N.W.2d 415, 428 (2002). The PWDCRA prohibits associations "in connection with a real estate transaction . . . [from] refus[ing] to make reasonable accommodations in rules, policies, or services, when the accommodations may be necessary to afford the person with a disability equal opportunity to use and enjoy residential real property." Mich. Comp. Laws §§ 37.1103, 37.1506a(1)(b). The FHAA defines "discrimination [to] include[] . . . a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling . . . ." 42 U.S.C. § 3604(f)(3)(B). To prove a reasonable-accommodation discrimination claim, a plaintiff must produce evidence that (1) she suffers from a disability (as the Act defines

-14-

it); (2) she requested a reasonable accommodation or modification of the "rules, policies, practices, or services" relating to the use or enjoyment of a dwelling; (3) the housing provider refused the accommodation; and (4) the housing provider "knew or should have known of the disability at the time of the refusal." *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir. 2014).

The reasonable-accommodation element in turn has three "operative" components of its own: "'equal opportunity,' 'necessary,' and 'reasonable.'" *Anderson v. City of Blue Ash*, 798 F.3d 338, 360 (6th Cir. 2015) (quoting *Smith & Lee Assocs. v. City of Taylor, Mich.*, 102 F.3d 781, 794 (6th Cir. 1996)). The court of appeals has explained that the first two, closely-related elements invoke a causation inquiry, requiring a plaintiff to "show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." *Smith & Lee Assocs.*, 102 F.3d at 795 (citations omitted). Stated differently, "[e]qual use and enjoyment of a dwelling are achieved when an accommodation ameliorates the effects of the disability such that the disabled individual can use and enjoy his or her residence as a non-disabled person could." *Anderson*, 798 F.3d at 361 (citations omitted).

To establish that the requested accommodation is reasonable, a plaintiff must show that it "imposes no 'fundamental alteration in the nature of the program' or 'undue financial and administrative burdens.'" *Howard v. City of Beavercreek*, 276 F.3d 802, 806 (6th Cir. 2002) (quoting *Smith & Lee Assocs*, 102 F.3d at 794)). Courts must "balance the burdens imposed on the defendant by the contemplated accommodation against the benefits to the plaintiff." *Groner v. Golden Gate Gardens Apartments*, 250 F.3d 1039, 1044 (6th Cir. 2001) (citing *Smith & Lee Assocs.*, 102 F.3d at 795). In striking that balance, courts consider not only the costs of the accommodation, but also its "functional and administrative aspects" as well. *Ibid.*

On the reasonable-accommodation element, both sides here focus on the demands by Davis's attorney in his April 24, 2017 letter. Those demands escalated from "ensur[ing] that any further smoking in Unit #115 will not escape from Unit #115 into [Davis's] unit or the common element areas of the building" to requiring "the tenants of Unit #115 immediately [to] cease and desist from further smoking in Unit #115 and/or the common elements of the shared building"; and later Davis expanded that request to cover the entire condominium complex.

It is not at all clear that such an accommodation — as extreme as it is — would confer upon Davis the use and enjoyment of her residence in the same manner as a non-disabled person, that is, a person without respiratory hypersensitivities. Davis believes the first two closely related elements are met because without a prohibition on smoking, she does not have the equal opportunity to enjoy living in her unit and breathing without impairment. However, she previously has complained of non-tobacco smell aggravating her respiratory conditions. In January 2015, the plaintiff complained that the smell of her neighbor's cooking nearly caused her an asthma attack. The evidence Davis offers on this point is mostly anecdotal and conclusory. And banning smoking would not "ameliorate[] the effects of [her] disability." *Anderson*, 798 F.3d at 361

At least one federal court has concluded that in cases involving exposure to certain chemicals, including tobacco smoke, expert testimony is necessary to demonstrate "a direct linkage between the proposed accommodation and the equal opportunity to which a person with a handicap is entitled." *Matarese v. Archstone Pentagon City*, 761 F. Supp. 2d 346, 364-65 (E.D. Va. 2011). In *Matarese*, the plaintiff, who suffered from chemical sensitivities to paint fumes, tobacco smoke, and mold, alleged that the defendants violated section 3604(f)(3)(B) when they declined to replace weather stripping around her apartment door to block smoke from entering. *Id.* at 356. In granting the defendants' motion for summary judgment on the reasonable

accommodation claim, the court explained that to meet her burden, the plaintiff must have shown through expert testimony that the proposed accommodation did "not just ameliorate the burdens shared by all individuals exposed to chemicals." *Id.* at 365. The court found that the affidavit of the plaintiff's doctor was insufficient because it merely stated that the proposed accommodation would allow her to avoid exposure to smoke and ameliorate any negative impact on her chemical sensitivities. *Ibid.* ("Plaintiffs have failed to meet their burden in establishing the requisite elements of their claim because this affidavit does not state that the proposed accommodations will ameliorate Ms. Matarese's handicap specifically, such that she would be afforded equal opportunity in housing, as compared to similarly situated individuals.").

Similarly, Davis's reliance on her doctor's letter falls short of establishing that banning smoking will in fact ameliorate her respiratory conditions. In a letter dated June 22, 2017 — approximately two months after the plaintiff requested accommodation from the Lamnins and Echo Valley — Dr. Marisa Abbo, Medical Director of Covenant Community Care, stated:

> Ms. Davis has a history of breast cancer, asthma, and multiple chemical sensitivity disorder which significantly interfere with her ability to breathe.
>
> . . .
>
> Due to Ms. Davis' condition, exposure to tobacco smoke is detrimental to her health and increases the risk of Ms. Davis suffering an adverse event such as an asthma attack. I urge you to grant Ms. Davis accommodation request to ban smoking in the common areas and make the surround[ing] units non-smoking. This accommodation is necessary to ameliorate the conditions of Phyllis Davis's disability.

Abbo Letter, ECF No. 20-2, PageID.253. The *Matarese* court squarely rejected this type of conclusory opinion as insufficient to show that the proposed accommodation ameliorated the plaintiff's handicap specifically, and not just the burden shared by all individuals exposed to smoke. The plaintiff's complaints about other smells exacerbating her condition does not help her

case. Without more, the plaintiff has not shown the accommodation she requested was necessary to afford her equal opportunity to enjoy her unit.

More problematic is the reasonableness element. Davis argues that banning smoking throughout the complex is cost free. That argument, however, ignores the functional and administrative difficulties of such a measure. Davis demands that the Echo Valley Association Board adopt a position that the law does not permit. It is not illegal for an adult property owner to smoke in his or her own home. As noted earlier, nothing in the Echo Valley condominium documents prohibits smoking anywhere in the complex. Michigan's common law allows property owners to impose covenants that restrict a landowner's use of his or her property, but the landowner (or a predecessor in interest) must consent to the restriction. *Eveleth v. Best,* 322 Mich. 637, 641-42, 34 N.W.2d 504, 505 (1948) (holding that a restrictive covenant, which was not imposed by a common grantor of all the lots in the development, was not valid against an owner absent his consent or the consent of his predecessors in interest).

A person who purchases a condominium becomes bound by the rules and restrictions found in the condominium documents (master deed, bylaws, articles of incorporation, etc.) in effect at the time of the purchase. *See Yarmouth Commons Ass'n v. Norwood*, 299 F. Supp. 3d 862, 868-69 (E.D. Mich. 2017). And condominium documents may be amended by the board from time to time without the co-owners' consent *if* the amendments do not materially alter or change the co-owners' rights. Mich. Comp. Laws § 559.190(1). However, a condominium association may not "expand [a] restriction or impose a new burden on the lot owners with less than unanimous consent under the guise of interpreting the restriction." *Conlin v. Upton*, 313 Mich. App. 243, 265, 881 N.W.2d 511, 525 (2015) (citing *Golf View Improvement Ass'n. v. Uznis,* 342 Mich. 128, 130-131, 68 N.W.2d 785, 786 (1955)). And an association may not amend condominium documents

outright without "the consent of not less than 2/3 of the votes of the co-owners and mortgagees" when the amendment would materially alter the co-owners' rights. Mich. Comp. Laws § 559.190(2).

Echo Valley was well aware of these legal limitations when it presented for a vote of the co-owners a proposal to ban smoking throughout the complex, as Davis asked. The proposal did not pass. In the wake of that decision, it is not reasonable to impose upon Echo Valley the administrative burden of implementing a use restriction upon co-owners in a way that violates the law. Imposing a smoking ban on all Echo Valley co-owners, the effect of which would be to restrict them from engaging in a lawful activity on their own property, cannot be accomplished in this case without a violation of existing law. For that reason alone, Davis's accommodation demand is not reasonable.

Davis's demands have not been ignored. The Association has gone to some lengths to accommodate her concerns, from installing a fresh air filtration system on the plaintiff's furnace ductwork, to administering a complex-wide referendum on her smoking ban proposal. Changing the entire complex from a smoking-permitted to a smoke-free development without the proper consent that Michigan law requires, however, is a bridge too far. Because Davis has not shown that she requested a "reasonable accommodation," her FHAA and PWDCRA claims fail as a matter of law.

### B.

The defendants contend that Davis's private nuisance claim in Count III of the amended complaint must be dismissed. In Michigan, a private nuisance, in general terms, consists of an interference with the use and enjoyment of land. *Henry v. Dow Chem. Co.*, 484 Mich. 483, 533, 772 N.W.2d 301, 328 (2009). The Michigan Supreme Court has observed that nuisance claims

have addressed a variety of types of harm to landowners, leading to confusion and imprecision in defining the elements of the cause of action. *Adkins v. Thomas Solvent Co.*, 440 Mich. 293, 303, 487 N.W.2d 715, 719-20 (1992). However, "the gist of a private nuisance action is an interference with the occupation or use of land or an interference with servitudes relating to land." *Id.* at 303, 487 N.W.2d at 720. Pollution of the air by the release of contaminants can constitute a private or public nuisance. 4 Restatement Torts, 2d, § 832, p. 142.

To prove a private nuisance, the plaintiff must show that (1) she has property rights that were interfered with, (2) the invasion results in significant harm, (3) the defendant's conduct was the legal cause of the invasion, and (4) the invasion was either (i) intentional and unreasonable or (ii) negligent, reckless, or ultrahazardous. *Adkins*, 440 Mich. at 304, 487 N.W.2d at 720.

For a defendant to be liable for a private nuisance, however, he or she "must have possession or control of the land.'" *Sholberg v. Truman*, 496 Mich. 1, 6, 852 N.W.2d 89, 92 (2014) (quoting *Wagner v. Regency Inn Corp.*, 186 Mich. App. 158, 163, 463 N.W.2d 450 (1990)). Although Count III of the amended complaint is brought against all the defendants, it appears to have no applicability now that Ms. Rule (the smoker) has moved out of the neighboring unit and the Lamnins have been dismissed from the suit. The remaining defendants cannot be held liable. Under Michigan law, a landlord cannot be found responsible for a nuisance that his tenant creates. *Id.* at 8-9, 852 N.W.2d at 93 (citing *Samuelson v. Cleveland Iron Mining Co.,* 49 Mich. 164, 171, 13 N.W. 499, 502 (1882)). The reason is that "[a] party who has no control over the property at the time of the alleged nuisance cannot be held liable therefor." *Id.* at 13, 852 N.W.2d at 95-96. It logically follows that a condominium association is even farther removed from liability for the legal conduct of a co-owner within his or her own unit, when no bylaw has been violated.

Here, the Association has no control over other residents' decision to smoke in their units as smoking is not prohibited by the condominium bylaws. Absent an amendment to the bylaws, which the owners already have rejected, the Association cannot be considered the legal cause of the "smoking nuisance." Contrary to the plaintiff's position, it is of no significance that the Association has the power to modify the ventilation system — assuming it is shared — as individual residents are the source of the alleged injury. Because no other individual owners or tenants are named in this suit, this claim fails as a matter of law. *Morgan v. Nickowski*, No. 334668, 2017 WL 5759789, at *5 (Mich. Ct. App. Nov. 28, 2017) (finding nuisance claim "meritless on its face" where landlord did not have "any hand in creating the conditions that led to the alleged nuisance.").

Count III of the amended complaint must be dismissed as a matter of law.

C.

In Count IV of the amended complaint, Davis alleges that the defendants breached their contractual duties under Echo Valley's governing documents to enforce the annoyance and nuisance, insurance rate, and safe, clean, and sanitary provisions of the bylaws. In her motion, Davis also seeks to allege a failure to enforce the "unlawful and offensive activity" provision. That latter claim was not pleaded in the amended complaint, Davis has not sought another amendment, and therefore that claim is not properly before the Court. *See Carter v. Ford Motor Co.*, 561 F.3d 562, 568 (6th Cir. 2009); *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 787-88 (6th Cir. 2007).

Under Michigan law, condominium association bylaws are considered a "binding contract" between unit owners and the association. *Tuscany Grove Ass'n v. Gasperoni*, No. 314663, 2014 WL 2880282, at *3 (Mich. Ct. App. June 24, 2014) (reasoning that "[t]he Association was formed

as a nonprofit corporation. 'The bylaws of a corporation . . . constitute a binding contract between the corporation and its shareholders.' The Bylaws in the case are such a contract.") (quoting *Allied Supermarkets, Inc. v. Grocer's Dairy Co.*, 45 Mich. App. 310, 315, 206 N.W.2d 490 (1973), *aff'd* 391 Mich. 729, 219 N.W.2d 55 (1974)); *see also Tuscany Grove Ass'n v. Peraino*, 311 Mich. App. 389, 393, 875 N.W.2d 234, 236 (2015) ("Condominium bylaws are interpreted according to the rules governing the interpretation of a contract."). Echo Valley's bylaws charge the board of directors with the responsibility for "enforc[ing] the provisions of the Condominium Documents," including the master deed, the bylaws, the articles of incorporation, rules and regulations adopted by the Association, and state law. Article I, Section 4(a)(11), ECF No. 75-3, PageID.2232.

The crux of this count of Davis's amended complaint is based on Article VI of the bylaws, which places certain restrictions on co-owners' use and enjoyment of their units, such as:

> Section 4. No immoral, improper, unlawful or offensive activity shall be carried on in any apartment or upon the common elements, limited or general, nor shall anything be done which may be or become an annoyance or a nuisance to the co-owners of the Condominium, nor shall any unreasonably noisy activity be carried on in any unit or on the common elements. No co-owner shall do or permit anything to be done or keep or permit to be kept in his apartment or on the common elements anything that will increase the rate of insurance on the Condominium without the written approval of the Association and each co-owner shall pay to the Association the increased cost of insurance premiums resulting from any such activity or the maintenance of any such condition.

> Section 15. Each co-owner shall maintain his apartment and any limited common elements appurtenant thereto for which he has maintenance responsibility in a safe, clean and sanitary condition.

*Id.* at PageID.2241-42, 2245). Davis alleges that the defendants breached their contractual duty to enforce these provisions to eliminate offensive conduct, specifically smoking.

1.

Davis has not offered any evidence that smoking constitutes an activity that will raise insurance rates, except for the deposition testimony of board member Louise Genovese, who

admitted that it is her position that smoking marijuana "could increase the rate of insurance." Genovese dep. at 27 (ECF No. 64-2, PageID.1833). There is nothing else in the record to support Davis's claim that smoking in fact increases the rate of insurance. The board cannot be faulted for not instituting a no-smoking policy based on the possibility of increased insurance rates. And the plaintiff has not identified any other breach of the board's contractual duty to enforce the restrictions in the condominium documents.

2.

Similarly, in support of the idea that the board failed to enforce the requirement in section 15 of Bylaw Article VI, Davis offers only Ms. Genovese's testimony that she believed marijuana and cigarette smoke to be both unsafe and unclean and that its distribution through the vents violates Section 15. Although "the author of a party admission need not have personal knowledge of the statements contained in the party admission," *Weinstein v. Siemens*, 756 F. Supp. 2d 839, 853 (E.D. Mich. 2010) (Borman, J.), the plaintiff points to no evidence that cigarette smoke has infiltrated the ventilation system of her unit, or that any of the units have not been maintained in a safe, clean, or sanitary condition. In fact, Davis has not definitively identified any particular source of secondhand smoke at Echo Valley. On April 4, 2018, plaintiff's counsel represented to defense counsel that they were "currently investigating the source of the smoke, and believe it may be coming from unit 114." Apr. 4, 2018 email, ECF No. 75-25, PageID.2403. No updated information since has been presented to the Court. Without more, the defendants cannot be held liable for failing to enforce a restriction on an unknown co-owner.

3.

Finally, Davis has not established that smoking at Echo Valley constitutes an "annoyance or a nuisance" that the bylaws prohibit. The bylaws do not define those terms; however, the parties

apparently agree that tort principles supply the appropriate meaning. Davis relies exclusively on the deposition testimony of board members Genovese and Williams to support her position, but a closer reading of that testimony shows these board members did not admit violations of the bylaws, as the plaintiff attempts to represent. Genovese testified that cigarette smoke "can be" considered a nuisance for those who do not smoke, and Williams answered in the affirmative when asked if cigarette smoke annoyed her. But those acknowledgments about smoking in the abstract alone do not satisfy the plaintiff's burden.

Although Michigan courts have not addressed whether infiltration of secondhand smoke can be considered a nuisance, several courts around the country have weighed in on the issue. Although Davis did not cite any supporting authority in her summary judgment motion papers, she did refer in her motion for preliminary injunction to five decisions in support of her argument that cigarette smoke might be considered a private nuisance. None of them are particularly helpful to her position, since those decisions depend on the facts peculiar to each case, and Davis has not offered similar or analogous facts on this record.

The first case, *Chauncey v. Bella Palermo Homeowners Association*, Case No. 30-2011-00461681 (Cal. Sup Ct. June 11, 2013), is a not a reported opinion, but a judgment on a jury verdict and a special verdict form that found for the plaintiffs after a trial. The case provides no guidance, as there is no recitation of the facts or indication that this case actually supports the plaintiff's position.

The second case, *Merrill v. Bosser*, Case No. 05-4239 COCE 53 (Broward Cty. Cir. Ct., June 29, 2005), is a memorandum opinion and judgment of a trial court finding that "excessive secondhand smoke" that infiltrated the plaintiff's condominium unit amounted to a trespass, private nuisance, and a breach of the covenant of quiet enjoyment. Judgment was rendered not

against the condominium board, but against the plaintiff's upstairs neighbor. The court acknowledged that "common secondhand smoke which is customarily part of everyday life would not be an actionable trespass." *Id.* at 3. However, the court described quantifiable evidence of the "excessive" amount of smoke infiltrating the units of the plaintiff and his other neighbors that took the case beyond garden-variety inconvenience and annoyance. Davis has not offered such evidence here.

The plaintiff also cited *Heck v. Whitehurst Co.*, No. L-03-1134, 2004 WL 1857131 (Ohio Ct. App. Aug. 20, 2004), which is not a nuisance case. There, the plaintiff-tenant complained that "cigarette smoke [was] entering into [his] bedroom and [his] bathroom in extreme volumes" from his neighbor's apartment infiltrated his unit. *Id.* at *1. The plaintiff testified "that the problem was so bad that he had to have his clothes professionally dry cleaned, had to leave his windows open in the middle of winter and had to sleep in the living room." *Id.* at *5. The court found that the weight of the evidence at trial established that the defendant-landlord breached his duty to keep the apartment in a fit and habitable condition by not repairing the window, which allowed smoke to enter from the apartment below. *Id.* at *6.

Davis also cited *Upper East Lease Assocs, LLC v. Cannon*, No. 444409/09, 2011 WL 182091, at * 1 (N.Y. Dist. Ct. Jan. 20, 2011), but that case is inapposite because the addendum to the offending tenant's lease specifically addressed the issue of secondhand smoke and required tenants to agree to "take all measures necessary to minimize second-hand smoke from emanating from Tenant's apartment and infiltrating the common areas of the Building and/or into other apartments in the building." No such duty emanates from the condominium documents in this case. Likewise, *Christiansen v. Heritage Hills 1 Condo. Owners Ass'n*, Case No. 06CV1256 (Colo. Dist. Ct. Nov. 7, 2006), provides no support for the plaintiff's position here. Although the

court acknowledged that the smell from secondhand smoke constituted a nuisance under the circumstances of that case, the decision addressed the authority under Colorado law of a condominium to amend its bylaws to ban smoking upon the vote of an appropriate number of co-owners. *Id.* at 7-8. As noted above, Echo Valley held a vote on a smoking ban, but the measure was defeated.

Several other courts have concluded that smoking cigarettes in the privacy of one's own home does not amount to an unreasonable interference with a neighbor's use of his or her property. In *Ewen v. Maccherone*, 32 Misc.3d 12, 927 N.Y.S.2d 274 (N.Y. App. Div. 2011), for instance, the court concluded the plaintiffs failed to state a cause of action for private nuisance because, "[c]ritically, defendants were not prohibited from smoking inside their apartment by any existing statute, condominium rule or bylaw. Nor was there any statute, rule or bylaw imposing upon defendants an obligation to ensure that their cigarette smoke did not drift into other residences." The plaintiffs alleged that their neighbors' excessive smoking infiltrated the plaintiffs' walls, causing them personal injuries, and that the condition was exacerbated by building-wide ventilation. *Id.* at 13, 927 N.Y.S.2d at 275. The court expressed sympathy for the plaintiffs' apparent discomfort, but it could not avoid the conclusion that "the law of private nuisance would be stretched beyond its breaking point if we were to allow a means of recovering damages when a neighbor merely smokes inside his or her own apartment in a multiple dwelling building." *Id.* at 15, 927 N.Y.S.2d at 277. The court accepted the premise that secondhand smoke and the odors it created are "annoying and uncomfortable to reasonable or ordinary persons." *Ibid.* But the court relegated that unpleasantness to "but one of the annoyances one must endure in a multiple dwelling building." *Ibid.* (citations omitted). The court also "recognize the significant health hazards to nonsmokers inherent in exposure to secondhand smoke." *Ibid.* (citations omitted). But the court

concluded that "in the absence of a controlling statute, bylaw or rule imposing a duty, public policy issues militate against a private cause of action under these factual circumstances for secondhand smoke infiltration." *Ibid.* (citations omitted).

Other courts have reached the same conclusions. S*ee Feinstein v. Rickman*, 136 A.D.3d 863, 864-65, 26 N.Y.S.3d 135, 137 (N.Y. App. Div. 2016) (affirming the lower court's dismissal of the plaintiff's secondhand smoke nuisance claim); *Nuncio v. Rock Knoll Townhome Village, Inc.*, 389 P.3d 370, 374-75 (Okla. Civ. App. 2016) ("We agree with Defendants that no published Oklahoma decision has addressed claims arising out of smoke migrating from a neighbor's use of tobacco in his home. Other states which have addressed these claims have almost uniformly found no right to relief.") (collecting cases); *Schuman v. Greenbelt Homes, Inc.*, 69 A.3d 512, 520 (Md. App. 2013) ("Because GHI's members were allowed to smoke at the time the contracts were signed (and still are), the mere act of smoking in one's unit or on one's patio is unlikely to be substantially and unreasonably offensive to any person at any time.").

Smoking in Michigan, as in many other states, is regulated by the state legislature. The Michigan Clean Indoor Air Act, Mich. Comp. Laws § 333.12601 *et seq.*, prohibits smoking in several public places, including restaurants, places of employment, and health care facilities. The legislature has not yet limited a person's right to smoke in his or her own home.

Here, the plaintiff does not point to any specific evidence of the extent or amount of secondhand smoke being generated at Echo Valley, or any evidence of the extent of harm to her body. She mentions elsewhere in her briefing that other residents have complained about smoking at Echo Valley, but she has not presented that information in such a way that would give the Court a basis to depart from the reasoning of other courts. General observations about smoking at hotels or other residences do not establish that smoking at Echo Valley is so unreasonable as to trigger

the Board's enforcement obligation under the bylaws. There is nothing that suggests that the smoking habits of the residents of Echo Valley are unique or that they present any special danger to the plaintiff. It is, of course, possible to imagine an extreme scenario where cigarette smoke could be considered a nuisance or annoyance, as illustrated by some of the cases the plaintiff cited. But without some evidence that the cigarette smoke concentration and accompanying odors extend beyond "the annoyances one must endure in a multiple dwelling building," Davis cannot show that the secondhand smoke at Echo Valley constitutes an "offensive activity," "an annoyance or a nuisance" that the Board is compelled to eradicate through its contractual enforcement powers.

The defendants, therefore, are entitled to a judgment as a matter of law on Count IV of the amended complaint.

## IV.

The plaintiff has not offered sufficient justification to exclude the testimony of Mark Clor. The undisputed material facts establish that the plaintiff is not entitled to relief on any of her claims, and the defendants are entitled to a dismissal of the amended complaint.

Accordingly, it is **ORDERED** that the plaintiff's motion to exclude the testimony of Mark Clor (ECF No. 63) is **DENIED**.

It is further **ORDERED** that the plaintiff's motion for summary judgment (ECF No. 64) is **DENIED** and the defendants' motion for summary judgment (ECF No. 80) is **GRANTED**.

It is further **ORDERED** that, because the motions and responses fully set forth the arguments, and oral argument will not assist in the disposition of the motion, the Court will decide it on the papers, *see* E.D. Mich. LR 7.1(f)(2), and hearing scheduled for November 26, 2018 is **CANCELLED**.

It is further **ORDERED** that the plaintiff's motion for contempt (ECF No. 85) and her second motion to compel document production (ECF No. 89) are **DISMISSED as moot**.

It is further **ORDERED** that the amended complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date: November 7, 2018

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on November 7, 2018.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI

---